Your Honor, before proceeding, may I make a statement on the record concerning Judge Harry Fregerson? Sure, absolutely. I noticed that he passed away recently at the age of ninety-four. Yes. And some twenty-five years ago I had occasion to try a case to Judge Fregerson where he sat as the trial judge in the District Court in Montana and he rendered a judgment or a decision. He loved sitting in Montana. He loved Montana. Was that the Bridge case in Great Falls? No, it involved a dispute between a surety and a contractor. And the decision or the outcome of that case significantly impacted the construction industry throughout America. Now, that was twenty-five years ago. I just had great respect for the man and I'd just like to say I hope he rests in peace. Thank you very much, Counsel. We appreciate your sentiments. I'd like to reserve three minutes. Okay. I'll try and help you. The rule of this case established by the District Court is that it's okay for an engineer to be dishonest and not truthful in dealing with a third-party contractor if that contractor does not have a valid cause of action against the engineer's principal, the owner. That is wrong and this Court should reverse. Now, while the cause of action against Staley by the contractor arose from the same circumstances and failed project, the case against the professional engineer Staley is much different than the contract issues tried in the State Court involving the public district where Staley was not a party nor were her tortious misrepresentations with the plaintiff allowed to be considered because the Court ruled she was not a speaking agent. It was hearsay. Mr. Baker, can you help me a little bit with the facts? It appeared to me that when the change order was entered that Pacific Boring substituted a different method than what had originally been called for and that the language of the change order included what I would call an assumption of the risk provision that it would be responsible for the soil conditions and cobbles and boulders and that sort of thing. And I think Judge Schaefer cited to that in her King County Superior Court decision. Your Honor, the change order itself is the subject of the misrepresentation to begin with. But I'll address that question. The change order required the contractor to assume responsibility for engineering of the different methodology. And, you know, normally in construction, the owner designs a project and leaves it to the contractor to determine the methodology. So under that change order, the contractor did what he normally does in coming up with the engineering support for the open shield pipe jacking methodology, submitted it to Ms. Staley, and she reviewed it and approved it without disclosing that she had already determined in a written memorandum that open shield pipe jacking was not feasible on this project. That's the harm. Okay. But what do we do with the contract provision that essentially said that Pacific Boring would assume the risk of the site conditions? Well, that is not true because under that change order, the specifications still applied and there were representations about the nature of the ground and so forth. Remember, this job had been fully engineered. All the contractor did was take responsibility for the methodology. Was Pacific Boring supplied with the geotechnical engineering? Yes, the altered geotechnical, which indicated that the ground conditions were going to be stable and no flowing water, which is exactly what she represented to him. I'm sorry. If she had given him the original. Are you accusing her of actually modifying or altering? Absolutely, Judge. But she stripped out of the soils report the language which recommended against any form of boring jacking, which would include open shield pipe jacking. My point simply is, if Ms. Staley had been honest and provided the original soils report to this contractor or her memorandum saying open shield pipe jacking is not feasible on this project, change order number one would never ever, I mean, nobody in their right mind would have signed up on that proposition. And it's fraud in the inducement or misrepresentation which induced this. What could be possibly her motive if we were to assume your version of what happened here? What's in it for her? Why would she do something like that? Your Honor, how would she gain? That's a great question because there's no plausible explanation why on earth a professional engineer would do that, especially where she called and lured this contractor all the way from California up to Washington. But the fact of the matter is she had a history of conflict with contractors and she was in a mode where she was doing everything in her power to try to cast as much responsibility on contractors and away from herself and her clients as possible. And I think it was just her claims resistance mentality that caused her to take this extremely unusual step of allowing the contractor to modify to a proposition that she knew would not work. Of course, we still have the question of privity between your client and Ms. Staley. And as I look at the cases from the State of Washington, Burschauer seems to be the one that controls in this situation, which seems to hold that the economic loss rule prevents the general contractor from recovering purely economic damages in tort. That's true. Why shouldn't that be the rule of this case? Okay. The answer will be fairly long because I've got quite a bit to say about that. But first of all, the Burschauer case is no longer the law in the State of Washington because it applied the economic loss rule. Our Supreme Court has called that a misnomer. It's now the independent duty doctrine. Well, let me interrupt for just a moment. My understanding is that Burschauer has never been expressly overruled. That's correct. And, in fact, some of the recent cases, I believe one of them is affiliated and the other is Donatelli, could have overruled but failed to do so. Okay. Let me just go through this. One, in Burschauer, there was no relationship between the contractor and the engineer. All we had was the contractor had the set of plans and specifications which the engineer participated in preparing. That's not too far afield from this case, is it? Well, let me keep going. There were no safety issues involved in that case. There's no evidence that the engineer knew that there was anything wrong with his plans or specifications. There was purely economic damage. There was no risk of damage to property or persons, and there was no misrepresentation in that case. More importantly, in the Eastwood case, they indicated that the outcome may have been different if the building had collapsed, and that is if there's a risk of injury or damage associated with an engineer's design, it's an entirely proposition, different proposition under Washington law. Now, let me address the misrepresentation because there was none at all in Burschauer. In Washington, an engineer has an independent duty not to misrepresent and may assume additional professional obligations by affirmative conduct. That's Donatelli. Donatelli also said that one circumstance where the duty to avoid misrepresentation might arise independent of the contract is where one party, through misrepresentation, induces another to enter into a contractual relationship, and that's exactly what we had here. Our facts in support of our proposition on misrepresentation are at pages 9 through 15 of our brief, to which there is no response, none. And here's just basically, and I'll sum up this quickly. Ms. Staley called Pacific Boring's John Isles, who's right here, and encouraged him to bid the project. Pacific Boring is an expert in both auger boring and open-shield pipe jacking. She represented the ground would be very dense and flowing water was not anticipated, which was consistent with how she had modified the soils report. She claimed, she said, the project was designed for auger boring with full alignment dewatering, which is not true because she had written a report that said that dewatering of this project, of the alignment, was not possible. You've got a public park and you've got a wetland. It would take years to get permission to dewater those conditions, if at all. The project was underneath the park on the edge of Lake Washington in Kirkland? It surrounded the park and portions of it ran right through the park. I'll give you an example. The boring was being done beneath the water table, basically? It was below the water table. But if the ground is sufficiently strong, like it was the first several hundred feet of this, it doesn't matter because it will stay stable. It's when it becomes loose and then the water has an effect of causing it to flow, and that's what happened when this thing fell. Had the geotechnical engineer done no borings in that part of the alignment? They did. They took borings. They got permission to do that, and the borings indicated the ground was stable. But, you know, the borings are not always completely accurate, and that's why we have a lot of different site condition cases in this area. To go on, Isles suggested, well, if auger boring is going to be good, open shield pipe jacking is better. It's a more powerful methodology. And because they went to open shield, they were able to eliminate one of the shafts, save over $100,000 in money for the owner, and expect that this machine would be able to successfully do the job. She encouraged that he make the submittal, but she failed to disclose that she had written a report that open shield pipe jacking was not feasible on this project because it would require full alignment dewatering, and she knew that wasn't possible. She edited out language in the geotechnical report recommending against any form of boring and jacks. Now, these are facts that were learned during the course of discovery. Otherwise, I'm sure that the original lawyers in this case would have brought an action against her in the beginning. So all this was before Judge Schaefer when she ruled on the various summary judgment motions? Well, Judge refused to consider allowing any evidence of her misrepresentations into evidence. Now, she did not rule on the superior knowledge claim, and superior knowledge is the equivalent of failure to disclose under contract, and she never got to that. But you would think from reading the trial judge or the district court's decision that, in fact, it didn't make any difference, but it makes a huge difference. If she'd ruled on that, it would have been a very different story, but she never did. Then plaintiff's submittal to allow the open shield was reviewed and approved by Staley, which then induced the execution of change order one relied upon so heavily by both Staley and the district court. Change order number one was just simply a document that never would have been considered. Change order one was not the superseding cause of damage because plaintiff would never have signed it if they hadn't been fraudulently induced. Now, the district court noted that defendants do not deny communicating this information to plaintiff, and as I indicated, they ignored these facts in their brief. Also, the court held the issues, the contract issues and tort issues were nearly identical. Well, that just simply is not correct. One, the district was not sued for misrepresentation or professional malpractice. It was sued for superior knowledge, and as I indicated, the contract equivalent of failure to disclose, and that wasn't decided. And the district's contract defendants, the district's contract defenses does not offer protection to Staley. In Washington, when an agent is sued for her own tortious acts, she may not avail of contract defenses available to the principal, and that's the Roberts case and the Apex directional drilling case, which is a California district case in 2015, and I urge you to read it because it's a fabulously well-reasoned case. It's under California law, but those principles definitely apply to this case because they involve horizontal drilling as opposed to auger boring or open shield, but the principles are very much the same because the ground conditions that caused that to fail were very similar. Can you – you're just going to run out of time, and I had one question about the negligent misrepresentation claim. Okay, yes. Can you remind me, what was the district court's rationale for dismissing that claim? The misrepresentation? Right. Wasn't it on the cultivation? It was basically that it was not the proximate cause of the damage. Right. The court did not even consider fraud in the inducement or misrepresentation being the inducement of that change order. I thought the theory was that you could have gone back, or I don't know if it was you or the general contractor, but you all could have gone back to the owner and gotten – I can't remember what the initials are for that proceeding – to get compensation for these unexpected conditions, but you just didn't do that in a timely fashion, and so therefore whatever losses your client incurred were due to the – basically your lack of diligence on that. And that's true. My client did not do a good job of perfecting its contract claims rights, but the point, Your Honor, is that he never, ever, ever would have been in that position if these misrepresentations had not been made. If she hadn't called and lured them into this project with these false representations, if she had told them what her findings had been, that open-shield pipejacking was not feasible, change order number one never would have happened. This job never would have been bid by this contractor. Mr. Baker, you want to – Oh, go ahead, Justice. Quick question. I'm still stuck on Burschauer. What would you think about certifying this question to the Supreme Court of Washington? I would love it, except for the long time delay, which has already been – Very well. Thank you. It's hard to remember the facts of a case back in 2011, but – I hear you. I'll give you a minute on – a couple minutes on rebuttal if you want to save a little bit of time. Thank you, Judge. Mr. Gable. Good morning, Your Honors. May it please the Court, Andrew Gable on behalf of Staley Trenchless Consultants and Dr. Kimberly Staley. There are two independent bases to affirm the district court's decision. The district court correctly recognized that many of the very issues that are before the federal court action were previously decided and ruled upon by the state court judge in the prior action, and the district court properly recognized that notwithstanding the recent independent duty doctrine decisions, the majority of Pacific Boreings' claims are barred by longstanding Washington precedent in Burschauer-Phillips. What do you mean the majority? I thought there was only three claims before us, two of professional negligence, and maybe that's true as to the duty, but what about the negligent misrepresentation claim? Your Honor, there's a negligence claim and there's a negligent misrepresentation claim. Both of which can be dismissed based on a lack of duty under Burschauer-Phillips, with the exception of the pre-bid phone call, that component of the negligent misrepresentation claim. They really have two negligent misrepresentation claims, the first being that this design, the specifications themselves, negligently misrepresented the conditions. That can be handled and was handled under a duty analysis under Burschauer-Phillips, but that pre-bid phone call, that's separate, that would not be appropriate under Burschauer-Phillips analysis. What I was focusing on, it seems to me that's the more difficult position for you to defend, especially in light of what we've heard from your opponent. So maybe you can just jump in and address that and then backtrack and address the more general negligence. Absolutely, Your Honor. So in addressing the pre-bid phone call, we go back to the district court's ruling, which found that either through collateral estoppel, Staley's alleged negligent misrepresentations in that phone call were not the legal proximate cause of Pacific Boring's damages. Also, separate and apart from collateral estoppel, there's a sufficient record to find that there was no legal proximate cause and that there was an assumption of the risk by Pacific Boring. But what about your opponent's argument that to the extent you're trying to rely on change order one, is that? Yes, that's correct. That there was, you know, basically they would never have even signed off on that had your client been honest with them beforehand. So what about that? Because that seemed to me if you take out change order one from the equation, it's a lot harder to defend the district court's judgment. I think what you have here is a little confusion in the record on what change order one, when it took place. The pre-bid phone call that they're talking about was what occurred prior to bidding the job and agreeing to use a different method, auger boring, along three different, an entirely different alignment. Then in the phone call that they alleged that took place and where the misrepresentations occurred was at that point. They then entered into the contract, and then after that, execute or propose an alternative method and entered into this change order. And on that, we get back to what happened there specifically that caused the problems that Pacific Boring faced. And that's the analysis I think Judge Schaefer made and also the district court made, which is you had a failure to recognize that you had to dewater the alignment, which was contractually an obligation of Pacific Boring or the general contractors. That was their responsibility, and they admitted that they didn't dewater the alignment. And so right there you have findings by Judge Schaefer that said you, first off, had to dewater and you failed to. And second, that the conditions that you encountered were not materially different than what was indicated in the contract documents. Judge Schaefer already got to the very heart of this differing site condition claim. And in her ruling, she looked at what were stripped down geotechnical baselines according to Pacific Boring. She considered, and I would correct the record here, Pacific Boring's counsel in the state court action specifically argued that Staley and the owner had withheld information. They made all of those arguments, and Judge Schaefer still found that there was no differing site condition claim. Absent a differing site condition claim, there is no causation for that alleged phone call and what took place there because the soils were what the contract documents said they were. And so any failure at that point becomes Pacific Boring's failure, not Staley's. And that is why even on the pre-bid phone call separate, there is no causation and therefore no liability. And this was a finding before Judge Schaefer? The findings before Judge Schaefer were, first, that you had to dewater the alignment wherever that was contractually. Second, that there was no differing site condition claim, that the soils actually encountered by Pacific Boring were the same as what was represented in the geotechnical baseline reports, the contract documents. And also that there was no defective specification. And so that is Collateral estoppel on everything except? I don't believe so, Your Honor. I believe on collateral estoppel basis, those key findings lead the district court and can lead this court into finding that there is no legal proximate cause here. And so on collateral estoppel and those findings alone from Judge Schaefer, this court can affirm the district court's ruling and not even get into the duty analysis under Birschauer and the independent duty doctrine decisions. So you don't think there's any need to certify this question to the Washington Supreme Court as to the continuing viability of Birschauer? Correct, Your Honor. We do not believe that this case needs to be certified at the Washington Supreme Court. And to get into the specifics of why, it takes us right to Birschauer-Phillips. That is clear longstanding Washington precedent that the state Supreme Court has had now five opportunities to visit since the first independent duty decision in 2010 in affiliated FM and Eastwood. And what the current state Supreme Court has said in describing the Birschauer-Phillips case is that that Supreme Court was effectively doing the same duty analysis that we're doing now under the independent duty doctrine. And under that analysis in Birschauer-Phillips, that court found that there was no duty owed. And now let's get to the specifics of Birschauer-Phillips because this case falls squarely within the facts and holding of Birschauer-Phillips, notwithstanding the fact that Pacific Boring now alleges that there was some sort of safety concern here. I'm sorry. Maybe you should finish that point and I'll jump in. Okay. So what we're dealing with in Birschauer and what we're dealing with here is a contractor who incurred extra costs to complete the work. Whether those extra costs involved more labor, more safety mechanisms, more materials,  and the contract with the owner controls those risks and whether you can recover. If, as Pacific Boring alleges, that there was a true safety concern with these specifications in the contract, there would be a mechanism for recovery under the contract. In fact, that is exactly what Pacific Boring tried to do in its lawsuit with the owner and lost. What they're now doing is trying to do an end run around the contract, an end run around the owner, and an end run around Judge Schaefer's rulings in that state court and sue directly not the engineer of record, not the geotechnical engineer, but a consultant who worked for the owner on this project. And there is no duty in that circumstance. That takes us squarely back to Birschauer as opposed to these new independent duty doctrine decisions. During discovery, did your client acknowledge that what she supplied was different from what the original geotechnical report said? Well, and that now gets us into the specifics of the record here. No, there was no misrepresentations, no admission to a misrepresentation. Of course, in the course of creating the work product, there were revisions made by multiple parties, including Staley. To the geotechnical report? To the geotechnical baseline report. Not the geotechnical report. There's a difference. A geotechnical baseline report is a contract document that goes in with the general conditions and the specifications. It is an affirmative statement. Who prepares that? Who prepares that? It depends. It depends the owner and the owner's consultants, including in this instance, Kimberly Staley, as well as the engineer of record that stamped the specifications and the geotechnical. Mr. Baker, I thought Mr. Baker was accusing your client of actually altering the original report that was received by the geotechnical engineering firm that did the boring. That's what I heard him say. That is what you heard, Your Honor. That is not supported by the record at all. Those are just the accusations that are made, and those were the precise accusations that were made in the state court action, and Judge Schaefer did hear those. During discovery, did your client deny that she ever altered that original report in any way? Well, that gets to was there a geotechnical baseline that certainly she participated in revisions on and a geotechnical report that was never provided to the contractor to begin with in the bid. The contractor received borings, which she didn't alter and never admitted to altering, but statements within the geotechnical report, that report only surfaced in discovery because it wasn't made available, that component, the misrepresentations, some of them that he's referring to, was not before the contractor when bidding this project. Maybe I need to make my question more specific. Does the geotechnical engineering firm do a report on each boring? Is that what we're talking about, or is there what I'll call a summary report that says, we bored 10 different holes in these locations, and here is what our conclusions are with regard to site conditions? Right, and you're right. That would be the summary report that a geotechnical engineer did, in fact, create. That was not made available. No, not for bidding purposes. It came out during discovery. One of the arguments that Pacific Boring makes is the decision by the owner, which they say was influenced by Staley, was to withhold that information. Now, that information you're talking about was, there were several revisions made and discussions made by Staley, the geotechnical engineer, the engineer of record, and the owner, because that is a working document for the owner. It is not a document for the contractor. You wouldn't supply that to the company that's going to try to bore through the soil? No, you don't have to, Your Honor. What they supply is the actual borings, the actual geotechnical. So they get the report on what each boring revealed? Exactly. How far deep did it go? What did they encounter, whether it's cobbles, boulders? What's the blow count that tells you what the water table potentially is or how compact the soil is? Then they can make their own determinations, because Pacific Boring and others, they're the experts when it comes to what machine to use and how to proceed. Based on those reports, this is the method we think will work the best. Exactly. But many of the misrepresentations that are being discussed here were in a report that was never before for bidding purposes. It then came to light afterwards. And all of that, though, to be clear, was before Judge Schaefer, because those arguments were made. The only thing excluded for hearsay purposes was the prepaid phone call that came up in front of Judge Schaefer. Everything else was argued before. Why was that point argued before the State Court, Judge? Why was the withholding of all that information? Because that would have entitled, if they are correct and if they had causation for their damage, they would have been entitled to recover from the owner. But they tried and they lost. And now, instead of trying to appeal those, what they claim to be erroneous decisions by Judge Schaefer, they elected to cut bait and try a second time, get a second bite of the apple now directly against Staley. And remind me, did they try to bring your client into the State Court action? Did the State Court say no? Apparently, yes. They moved for a continuance to amend the complaint to add a claim in the 11th hour against Staley. And the court denied it and said, you had two years to bring Staley into this action. None of this is new information or newly discovered information. You chose not to. We're not going to move the trial yet one more time for that. So instead, what Pacific Boring did was file suit directly against Staley. Here in federal court? Here first in state court, then dismissed that and refiled in federal court. Okay. And do you know what the reason for the dismissal in state court was? I would proffer that it was because they were afraid that it would just be moved directly to Judge Schaefer. And Judge Schaefer, who had just made all those rulings, would come and enforce them in that action because we were going to move to consolidate that. So that's why we would proffer that they did that. But otherwise, we don't know. Okay. If there are no further questions, I'll yield the rest of my time. Thank you. Okay. Thank you very much. I've set the clock for two minutes. Your Honor, I'm not going to take the time to address the alteration of the geotechnical report or the dewatering of the alignment, which she said open shield is not feasible because it would require alignment dewatering, and that's not possible on this project. I'd just refer you to our brief at pages 9 through 15, and I'd emphasize they never responded to any of those assertions. They are, for purposes of this record on summary judgment, veracities. Now, referring the matter back to Barkshire, is of really interest of Barkshire back to the State Supreme Court. Let me just address that because I believe that Barkshire matter is very, very different than, and I'd like to analyze just quickly the affiliated case. In affiliated... Let me ask you one question about that. Procedurally, you didn't take an appeal to the Washington Court of Appeals from Judge Schaefer's summary judgment orders, did you? No, Your Honor. So if we certify this question to the Washington Supreme Court, are we in effect giving you an appeal that you failed to timely file? Well, Judge Schaefer never ruled on any of these misrepresentation issues. She never ruled on the application of the independent duty doctrine. It was never before her. That has to do only with the direct cause of action against an engineer. Okay. Now, affiliated held the engineer's duty of reasonable care extends to safety risk of physical damage to property, and I don't think it's any mystery that there's no activity in the construction industry more dangerous than tunneling, especially when you have an open-faced machine, which is encountering flowing ground, water, and cobbles and boulders. The workmen are right down in front of this machine and exposed to those conditions. What's your response to the Superior Court's finding that there was no difference in site conditions from what was represented and what was actually found? And she did, because the soils report indicated that the ground conditions would contain boulders and cobbles, and that's what they encountered. But that's not what we're arguing. We're arguing that it's the dewatering aspect of this that's the key, because it was flowing ground caused by water. All of a sudden, they got into a condition where they were inundated with water, and it flowed into this machine. So the reason they didn't try to dewater was that it was basically fruitless at that point because of the volume of water? That's true. In order to dewater these soils, Your Honor, it has to be engineered. It has to be permitted. You have to install it. You have to draw down the groundwater. It would take months, and this job did not have a schedule that would have allowed that to occur. Now – Counsel, you're going to have to wrap it up. Okay, and I will quickly. The case of Point at Westport involved a third-party developer and homeowners association which was allowed to sue an engineer for structural issues without privity, and there was no damage. The court held the risk itself constitutes an injury within the class of harm contemplated by a professional engineer's duty of care. And finally, in the matter of centurion properties, which went to the Ninth Circuit, and then it was referred back to the Washington Supreme Court, the Washington Supreme Court came back and analyzed the issue under affiliated independent duty doctrine, but they also adopted the California multi-factor test for analyzing third-party liability for all professionals. I believe if you send this back to the Washington Supreme Court, this will be the opportunity for them to move away from Berkshire and apply independent duty doctrine and the multi-factor test, which cannot be decided on summary judgment because all those issues are for the jury to decide in terms of relationship. Okay, counsel. Thank you very much. The case just argued is submitted, and we will decide whether to certify or answer the question ourselves.
judges: O'scannlain, Tallman, Watford